## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **MOBILE SYNERGY SOLUTIONS, LLC,** | § § § | |
| **Plaintiff** | § § | |
| **v.** | § § § | **CIVIL ACTION NO. 18-CV-445** |
| **SPRINT CORPORATION; SPRINT SPECTRUM L.P.; SPRINT SOLUTIONS, INC.; AND BOOST MOBILE, LLC,** | § § § § § § | **JURY TRIAL REQUESTED** |
| **Defendants.** | § | |

## MOBILE SYNERGY SOLUTIONS, LLC'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Mobile Synergy Solutions, LLC, files this suit against Defendants Sprint Corporation, Sprint Spectrum L.P., Sprint Solutions, Inc., and Boost Mobile, LLC for infringement of U.S. Patent Nos. 8,494,490 (the "'490 Patent") and 8,792,874 (the "'874 Patent").

Defendants infringe the asserted patents by providing visual voicemail and contact synchronization systems and services to their customers and end users.

### THE PARTIES

1.     Plaintiff and patent owner Mobile Synergy Solutions, LLC ("MSS") is a Texas limited liability company with its headquarters and principal place of

business at 1400 Preston Road, Suite 475, Plano, Texas 75093.

2.      Sprint Corporation is Delaware corporation.  Sprint Corporation may be served with process via its registered agent at Corporation Service Company, 215 Little Falls Drive, Wilmington, Delaware 19808.

3.      Sprint Spectrum L.P. is a Delaware limited partnership.  Sprint Spectrum L.P. may be served with process via its registered agent at Corporation Service Company, 211 E. 7th Street, Suite 610 Austin, Texas 78701-3218.  Sprint Spectrum L.P. is a wholly-owned subsidiaries of Sprint Corporation.

4.      Sprint Solutions, Inc. is a Delaware corporation having an address registered with the Texas Secretary of State at 701 Brazos St. Suite 1050, Austin, Texas 78701.

5.      Sprint Solutions, Inc. may be served with process via its registered agent at Corporation Service Company dba CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, Texas 78701-3218.

6.      Sprint markets unlicensed mobile phones and related wireless services in this district through its website (www.sprint.com), Sprint stores, and authorized retailers.

7.      Sprint operates several stores in Tyler and throughout the district.

8.      Sprint stores are located at the following physical addresses in the district:

- 118 E Loop 281 #101, Longview, Texas 75605;
- 1806 E End Blvd S Ste 100, Marshall, Texas 75670;
- 1400 W SW Loop 323 #70, Tyler, Texas 75703;
- 7925 S Broadway Ave #1030, Tyler, Texas 75703;
- 1745 Troup Hwy, Tyler, Texas 75701;
- 921 N. Central Expy Ste 102, Plano, Texas 75075;
- 101 W Spring Creek Pkwy #735, Plano, Texas 75023;
- 1008 W McDermoot Dr., #300, Allen, Texas 75013;
- 8480 TX-121 #101, McKinney, Texas 75070;
- 305 E. Fm544 #907, Murphy, Texas 75094; and
- 2811 Craig Dr. Ste. 104, McKinney, Texas 75070.

9. Pictured below is a Sprint store in Tyler:



10. Sprint admits that "it has customers who are residents of this District and that it has places of business in this District." *See Preferential Networks IP, LLC v. Sprint Spectrum L.P., Virgin Mobile USA, L.P., and Boost Mobile LLC*, 2:17-cv-197-JRG-RSP, Dkt. 42, ¶ 8.

11.     Sprint provides the Visual Voicemail application software and provides services and application downloads to end users and customers in this district and throughout the United States.



12.     Boost Mobile, LLC is a Delaware limited liability company.  Boost Mobile LLC may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street Suite 620, Austin, Texas 78701-3218.

13.     Boost Mobile, LLC is a wholly-owned subsidiary of Sprint Corporation.

14.     Boost markets mobile phones and related wireless services in this

district through its own stores and authorized retailers including Best Buy, RadioShack, and Walmart.

Find Boost mobile phones at these national retailers:

  

15.     Boost markets mobile phones and related wireless services in this district through its website (www.boostmobile.com), authorized retailers, and Boost Mobile locations.

16.     Boost Mobile is located at the following locations in the district:

- 1502 W University Dr Suite #112, McKinney, Texas 75069;
- 108 N McDonald St. McKinney, Texas 75069;
- 1120 E Parker Rd #112, Plano, Texas 75074;
- 3849 TX-64, Tyler, Texas 75704;
- 1212 W Bow St, Tyler Texas 75702;
- 115 N Beckham Ave. Tyler, Texas 75702;
- 513 E Front St. Tyler, Texas 75702;
- 2015 S Mobberly Ave, Longview, Texas 75602;
- 1809 W Loop 281, Longview, Texas 75604;
- 912 S Jackson St., Jacksonville, Texas 75766;
- 1311 S Jackson St, Jacksonville, Texas 75766 (Wal-Mart Authorized Retailer);
- 1906 S Jackson St 69, Jacksonville Texas 75766 (Dollar General Authorized Retailer);
- 5001 McKinney Ranch Pkwy, McKinney, Texas 75070 (Wal-Mart Authorized Retailer);
- 1721 N Custer Road, McKinney, Texas 75071 (Wal-Mart Authorized

Retailer);
- 2041 N Redbud Blvd., McKinney, Texas 75069 (Wal-Mart Authorized Retailer);
- 641 North Hill, Tatum, Texas 75691 (Dollar General Authorized Retailer);
- 1201 Stone St., Kilgore, Texas 75662 (Wal-Mart Authorized Retailer);
- 4006 Estes Pkwy, Longview Texas 75603 (Wal-Mart Authorized Retailer);
- 1202 S. High St. Longview, Texas 75602 (Save More Authorized Retailer);
- 422 W Loop 281 Suite 100, Longview, Texas 75605 (Best Buy Authorized Retailer);
- 2440 Gilmer Road, Longview, Texas 75604 (Wal-Mart Authorized Retailer);
- 505 Troup Hwy, Tyler, Texas 75707 (Wal-Mart Authorized Retailer);
- 5514 S Broadway Ave, Tyler, Texas 75703 (Best Buy Authorized Dealer);
- 6801 S Broadway Ave, Tyler, Texas 75703 (Wal-Mart Authorized Retailer);
- 450 S Southeast Loop 323, Tyler, Texas 75702 (Wal-Mart Authorized Retailer);
- 2107 W Gentry Parkway, Tyler, Texas 75702 (Save More Authorized Retailer); and
- 3820 State Highway 64 W, Tyler, Texas 75704 (Wal-Mart Authorized Retailer).

17. The Boost Mobile Premier Store is located at 513 E. Front Street, Tyler, Texas 75702.

18. Boost developed Boost Visual Voicemail application software and provides services and application downloads to end users and customers in this district and throughout the United States.



19.     Sprint and Boost offer postpaid and prepaid wireless voice, messaging, and data service to customers in the district and throughout the U.S. and its territories.

20.     In connection with their provision of wireless services, Sprint and Boost offer a selection of wireless devices, including smartphones, tablets and other mobile communication devices manufactured by Motorola Mobility and other unlicensed manufacturers directly to customers through retail stores and their websites and to dealers and third-party distributors for resale through independent

third-party retail outlets and third-party websites.

21.     Sprint and Boost market mobile devices specifically adapted for using Visual Voicemail services on the Sprint Wireless networks.

22.     Motorola Mobility, third-party resellers, distributors, Sprint, and Boost sell and offer for sale to end users and customers in this district the accused mobile devices specifically adapted for using Visual Voicemail services on Sprint Wireless network.

23.     Sprint and Boost contract with Motorola Mobility to provide Moto mobile devices for use on the Sprint mobile networks that are delivered to end users with the Sprint Visual Voicemail application software pre-loaded.

24.     Sprint and Boost market mobile devices featuring the Visual Voicemail application software to end-users in this district.

25.     The     screenshot     below     from     Motorola's     website (https://www.motorola.com/us/specials/sprint) features the Moto Z2 Force edition handset marketed for use on the Sprint mobile networks.  Sprint's branding and logo is visible on Motorola's webpage marketing handsets for use on the Spring mobile networks.



26.    Sprint and Boost (hereinafter collectively referred to as "Sprint") deliver mobile devices with Visual Voicemail and contacts application software pre-loaded to customers in this district and throughout the United States and its territories.

### JURISDICTION AND VENUE

27.    This is a patent suit brought under the United States Patent Act, namely 35 U.S.C. §§ 271, 281, and 284-285, among other laws.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

28.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b). Defendants do business in this judicial district, have committed acts of infringement in this judicial district, have purposely transacted business in this judicial district

involving the accused products, and/or have regular and established places of business in this judicial district.

29.    Defendants each are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long-Arm Statute, due at least to their substantial business in this State and judicial district, including at least part of their infringing activities and regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

30.    Sprint and Boost authorized retailers operate retail stores in this district and throughout the United States.

31.    Defendants provide smartphones and other end-user hardware configured to provide the Sprint and Boost Visual Voicemail services and contacts application software to customers in this district.

## BACKGROUND

### A.    Silent Communication Ltd.

32.    In 2004, inventors Max Bluvband and Shahar Hajdu founded Silent Communication Ltd. in Tel Aviv, Israel.  The company pioneered device and network-agnostic mobile client solutions including visual voicemail.

33.    The Patent Office recognized the inventors' pioneering efforts and awarded them patents covering their novel visual voicemail inventions.

34.     In the late 2000s, Silent Communication introduced and licensed to mobile operators the Silent Visual Voicemail System branded Silent VVM™.

35.     Silent Communication marketed its VVM solution to mobile network operators around the world, and by 2011, Silent VVM was available on more than 200 different mobile device brands worldwide.

36.     In 2016, Silent Communication assigned the '874 and '490 Patents to Plaintiff.

## B.     United States Patent No. 8,792,874

37.     MSS is the owner, by assignment, of U.S. Patent No. 8,792,874 (the "'874 Patent"), titled "System, Methods, Circuits and Associated Software for Augmenting Contact Details Stored on a Communication Device with Data Relating to the Contact Contained on Social Networking Sites."

38.     A true and correct copy of the '874 Patent is attached as Exhibit A.

39.     As the owner of the '874 Patent, MSS holds all substantial rights in and under the '874 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

40.     The United States Patent Office granted the '874 Patent on July 29, 2014.

41.     The '874 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

42.     Cellular phones are used for far more than just conversation.  Modern cellular networks offer users various value-added services.

43.     Many of these value-added services are implemented on network servers or by a third party connected to the network via a distributed data network as described in the '874 Patent specification's description of the background of the invention.

44.     For this reason, a phone user can only access these services via an intermediate media service such as web browsing, dialing, or IVR (Interactive Voice Response).  This makes these value-added services difficult and cumbersome to access and often entails an added charge for the intermediate media service.

45.     The '874 Patent addresses the need for cellular value-added services that minimize or negate the need for intermediate media user access.

46.     Social networking sites focus on building online communities of people who share interests and/or activities, or who are interested in exploring the interests and activities of others.

47.     Most social network services are web-based and provide a variety of ways for users to interact with the social network and social network contacts, such as via e-mail, instant messaging and blog-like services.

48.     In general, social networking services allow users to create a profile for themselves and can be broken down into two broad categories: internal social

networking (ISN) sites; and external social networking (ESN) sites such as MySpace, Facebook, Google+, LinkedIn, and Twitter.

49.    Social network users can upload a picture of themselves, create their "profile," add textual and/or graphical descriptions and post videos to social networking services.

50.    Use of social networking services via a mobile device is typically conducted using a mobile device's web browser or stand-alone mobile device application that operate independently of a mobile device's communication functions.

51.    Although a typical social networking service's mobile device application may allow users to perform virtually any action on the social network that could be performed by a user using a home computer, the inventors noted that such applications do not leverage social network data to improve mobile device communication functions.

52.    The '874 Patent describes systems, methods, circuits and associated software for augmenting contact details stored on a communication device, such as a smartphone, with data relating to contacts maintained on social networking sites by a user of the communication device.

53.    The inventions claimed in the '874 Patent provide a synchronization engine adapted to collect data from social networking sites (both ISNs and ESNs),

associate it with stored contact data, and display and/or store the collected data on the communication device.

54.    The inventions claimed in the '874 Patent integrate collected social network data in the operation of the communication device, which may include integrated usage of social network information with a mobile device's embedded communication functions.

55.    In some embodiments, the synchronization engine is installed on the communication device and prompts the user to input the social networking sites of which he is a member along with credentials for access to each of the social networking sites.   Alternatively, the synchronization engine may detect social networking sites associated with the device user.

56.    The synchronization engine accesses user profiles on social networks and compares contacts stored on the communication device to the user's contacts or "friends."  Then it synchronizes contact information across social networks and the user's personal communication device.

57.    Once the synchronization engine has correlated a communications device contact with a user profile from a social networking site, a pointer or link may be stored to enable future updates and maintain synchronization of the user's contacts.

58.    Embodiments disclosed in the '874 Patent include mobile network

server-side and client-side components that communicate over a data link typically provided by mobile network operators such as Sprint.

59. A visual voicemail client application may access metadata associated with a voice message (to identify the caller, for example) and display additional information to the mobile device user based upon the metadata (for example, social networking profile data correlated to the caller).

60. The particular combination of claim elements recited in the claims of the '874 Patent (e.g., social networking site profile data, synchronization engine, contact information stored on the communication device) was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the inventions.

## C.     United States Patent No. 8,494,490

61. MSS is the owner, by assignment, of U.S. Patent No. 8,494,490 (the "'490 Patent"), titled "Method, Circuit, System and Application for Providing Messaging Services."

62. A true and correct copy of the '490 Patent is attached as Exhibit B.

63. As the owner of the '490 Patent, MSS holds all substantial rights in and under the '490 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

64. The United States Patent Office granted the '490 Patent on July 23,

2013.

65.    The '490 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

66.    The '490 Patent provides methods, circuits, systems and applications that provide for download, synchronization, voicemail-message to text-message transactions, direct access and handling of selected voicemail messages through a user's user interface and other functionality relating to voicemails and related data received, generated, or stored on a cellular operator's voicemail server.

67.    The '490 Patent describes an invention that includes methods, circuits, systems and applications for providing messaging services.

68.    According to some embodiments of the invention, a Visual Voice Mail system may include server-side component(s) and client-side software application component(s) installed on a user's remote device such as a smartphone.

69.    According to some embodiments of the invention, one or more of the Visual Voice Mail server-side components may include, or be functionally associated with, a speech recognition module and algorithms adapted to convert an audio portion of a stored voice message into a text string.  A Visual Voice Mail user may select through an interface menu a preference as to whether to receive only voice message copies, only text string copies, or a combination of the two.

70.    According to some embodiments of the invention, the Visual Voice

Mail client application may include an interface module adapted to present a listing of locally stored voice messages, along with related parameters and/or metadata, as a list of items.

71.     The Sprint/Boost Visual Voicemail client may also access the list of contacts details stored on the remote device and correlate the origin of stored voice messages with contacts on the remote device and the details relating to contacts. Correlated voice message data may be displayed to the user along with the other metadata associated with the stored voice messages.

72.     The Sprint/Boost Visual Voicemail client may correlate data associated with a voice message, such as the origin, with data contained in a profile stored on a social network server and may be adapted to associate other data contained in a social networking site user profile with a specific voice message.

73.     The particular combination of claim elements recited in the claims of the '490 Patent (e.g., social networking site profile data, visual voicemail messages and correlated data, synchronization engine, contact information stored on the communication device) was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the inventions.

## D.     Accused Phones

74.     Sprint markets and provides Motorola, Sonim, and Essential smartphones and other mobile devices with client-side software and hardware for

performing the claimed methods and using the claimed systems.

75.     Examples of Accused Phones currently marketed for use on the Sprint networks include at least the Moto Z2 Force Edition, Moto E4, Moto E4 Plus, Moto Z3 Play, Moto E5 Play, Moto E5 Plus, and Moto G6 Play.







76.     The Sprint/Boost Visual Voicemail application is pre-loaded or installed

on Accused Phones.

77.     An end user or customer who has purchased an Accused Phone is able to utilize the Sprint/Boost Visual Voicemail application "out of the box" after purchasing an Accused Phone.

78.     The Moto e4 plus is sold pre-loaded with the Sprint Visual Voicemail application software.

## Sprint support

## Set up and access Visual Voicemail for the moto e⁴ plus

 

79.     The Moto e4 is sold pre-loaded with the Sprint Visual Voicemail application software.

## Sprint support

## Set up and access Visual Voicemail for the moto e⁴




80.     The Moto Z2 Force is sold pre-loaded with the Sprint Visual Voicemail application software.

## Set up and access Visual Voicemail for the Moto z² Force Edition




81.     Sprint instructs users how to install the Sprint/Boost Visual Voicemail product to their phones.

⊖ How do I add Visual Voicemail to my device that I brought over to Sprint?

   Visual Voicemail is available only on select Android BYOD devices. To enable Visual Voicemail on your phone you can either:

   • Click on the link included in your first Visual Voicemail notification
   • Search the Play Store for Sprint Visual Voicemail to download and install

⊖ How do I subscribe to Premium Visual Voicemail on my Android device?

   On your device > click on the voicemail icon > click on the menu (the 3 dots in upper right corner) > click on Settings > click on Preferences > click on Manage subscription > click on the service you want to add

82.     Accused Phones store a user's contacts including a phone number and an identity indicator associated with the phone number.

 

83.     The Sprint/Boost Visual Voicemail application includes setting for avatars.



84.     Software, hardware, and wireless communication radio equipment in Accused Phones correlate a first profile contained on a first social networking site with a first contact stored in said local memory; retrieve from the first social networking site data contained in the first profile and associate the retrieved data with the first contact.

85.     Defendants' operating system software, drivers, and installed application(s) on Accused Phones cause the control circuitry of the mobile phone to display, in association with the first contact, the retrieved data, upon the device's

graphic user interface.



86.    The Accused Phones continuously update a user's contact details with correlated information stored on social networking sites.



87.    In operation, when a contact stored in a user's Accused Phone updates his or her social networking profile, the Accused Phone retrieves, stores, and displays to the user the updated profile data.

88.    Accused Phones have a synchronization engine adapted to correlate a first profile contained on a first social networking site with a first contact stored in said local memory; retrieve from the first social networking site data contained in the first profile and associate the retrieved data with the first contact; and a presentation and operation module adapted to cause the control circuitry of said

mobile phone to display, in association with the first contact, the retrieved data, upon a graphic user interface.

89.     The following series of screenshots demonstrates the normal function and operation of the accused products when practicing the claims of the asserted patents.

90.     Using an accused mobile device, a user accesses a social networking site account:



91.     In normal operation the accused instrumentality synchronizes contact information stored on the social networking site with contact information on the mobile device.



92.    Sprint provides step-by-step instructions directing users how to install and configure the Sprint/Boost Visual Voicemail service provided by Sprint.

93.    Sprint provides remote devices with the Sprint/Boost Visual Voicemail application software pre-installed and client application software configured to communicate with Sprint server-side Visual Voicemail servers.

94.    Accused Phones communicate with social networking sites and retrieve data or images corresponding to a user's contacts stored on the phone.

95.    The screenshots below show a profile photo retrieved from social networking service LinkedIn that is displayed in association with a voicemail from the contact by operation and normal function of the accused instrumentality.



96.    Accused Phones have a screen and graphical user interface to display

to the user a list of voicemails left for the user with stored profile data that was retrieved from a social networking site.

97.    Accused Phones play voicemail messages selected by a user from storage on the device and/or Sprint server-side storage.



98.    Accused Phones include those models specifically identified in this complaint and past, present, and future models with substantially similar functionality and capabilities described as meeting one or more elements of the asserted patent claims.

99.    Defendants practice one or more claims of the '874 and '490 Patents, including at least claims 1-5, 8, 9, 11, 12, 14, 15, 18, and 19 of the '874 Patent and claims 1-29 of the '490 Patent by making, using, offering for sale, selling, licensing,

and/or importing Accused Phones, the Sprint/Boost Visual Voicemail system and service, and Contacts Applications on Accused Phones that practice the subject matter claimed in the '874 and '490 Patents.

100.    In addition to directly infringing the '874 and '490 Patents, Defendants are now indirectly infringing the '874 and '490 Patents by inducing and/or contributing to infringement by, among other things, ordering, using, licensing, selling, offering for sale, and/or importing the Accused Phones.  Sprint and Boost and users of the accused products are direct infringers of the '874 and '490 Patents.

101.    Defendant Sprint is a mobile network operator that provides, uses, licenses, offers to sell, sells and/or imports mobile devices including the Accused Phones for use on its networks.

102.    Defendants provide, use, license, offer to sell, sell and/or import other unlicensed mobile devices including Motorola, Sonim, and Essential phones for use on its networks and with contact synchronization and Sprint/Boost Visual Voicemail applications.



103.   The screenshot below from the Sprint website features the Sonim XP8 smartphone configured for use of the Sprint/Boost Visual Voicemail service on the Sprint mobile networks.







104.   Defendant Sprint's wholly owned subsidiary, Boost, provides, uses, licenses, offers to sell, sells and/or imports mobile devices including the Accused Phones for use on the Sprint networks.

105.   Defendants' Accused Phones are pre-loaded with software and content, and include hardware designed and intended to synchronize contacts data on the handset with data from social networking sites.

106.   Accused Phones are pre-loaded with Sprint/Boost Visual Voicemail software for using the Sprint/Boost Visual Voicemail services provided by Defendants.

107.   Sprint and Boost provide online tutorials and manuals directing customers and end users how to set up and use the Sprint/Boost Visual Voicemail system and service.

108.   Defendants provide instructions to users of Accused Phones directing how to set up the Sprint/Boost Visual Voicemail service.

109.   Sprint and Boost provide the Visual Voicemail service to customers and end users.

110.   Sprint and Boost provide Visual Voicemail application software for download and installation on Accused Phones.

111.   In normal operation on the Sprint networks, Accused Phones allow users to store contacts where a contact includes a phone number and an identity

indicator associated with the phone number.

112.   In normal installation of the Sprint/Boost Visual Voicemail services, users are encouraged to grant contacts access to the voicemail service.



113.   Defendants make, use, operate, license, and market a synchronization engine adapted to correlate a first profile from a first social networking site with a first contact stored in said local memory, retrieve from the first social networking site data contained in the first profile, and associate the retrieved data with the first contact; and a presentation and operation module adapted to cause the control circuitry of an Accused Phone to display, in association with the first contact, the retrieved data, upon a graphic user interface of the Accused Phone.

114.   Accused Phones are sold and provided to Sprint and Boost customers with Sprint/Boost Visual Voicemail application software pre-installed.

115.   Sprint and Boost allow users to bring their own devices and use the Sprint networks and Sprint/Boost Visual Voicemail system and service.

116.   The Sprint/Boost Visual Voicemail application allows users to access their voicemail without dialing into a voicemail system for audio playback.



117.   Defendants' Visual Voicemail application includes a voicemail-to-text (VTT) setting.

118.   Users authorize Sprint to allow it or a third party working on behalf of Sprint/Boost to listen to and transcribe a user's voicemail messages.

119.   Defendants encourage and instruct customers to download, configure, and use the Sprint/Boost Visual Voicemail application.

120.   Sprint is responsible for the content and operation of the Sprint/Boost Visual Voicemail application.

121.   The Sprint/Boost Visual Voicemail application is a value-added service Sprint provides to its customers.

122.   Defendants' Visual Voicemail system and service includes server-side components associated with visual voicemail servers that convert voice messages to data suitable for transmission over a data link such as a cellular radio link and client-side application software running on mobile devices including an Accused Phone.

123.   Client-side application software receives voicemail data from Sprint servers and stores the voicemail data on the user's device, such as an Accused Phone.

124.   Defendants' Visual Voicemail system and service comprises Sprint/Boost Visual Voicemail application software installed on Accused Phones that retrieve data and images from a user's social networking sites (e.g., user profile data) and correlate voice message data with retrieved data or images from social networking sites corresponding to callers who leave voice messages for the user.

125.   Accused Phones are programmed to display a list of voicemail messages with retrieved social network data or images and provide a user an interface to selectively play voicemail messages from the list.

126.   Defendants are jointly and severally liable for making, using, offering for sale, licensing, selling, and/or importing the accused Sprint/Boost Visual Voicemail system and service.

127.   Accused Phones are used and intended to be used to practice the asserted patents in substantially the same way.

128.   The Sprint/Boost Visual Voicemail application software operates in substantially the same way on the Accused Phones and other mobile devices sold or offered for sale, imported, or licensed by Defendants.

129.   Infringement of the '874 and '490 Patents by Defendants necessarily involves common questions of fact, including, but not limited to, factual questions about the Sprint/Boost Visual Voicemail application software and its operation, installation, cost/billing, instructions for use, integration with the operating systems (that are used on the Accused Phones), troubleshooting tips, ratings, and services provided to end users.

130.   By this complaint, Defendants are on notice of the '874 and '490 Patents and how the accused products infringe them.

131.   Defendants' continued acts of infringement including inducing, encouraging, aiding, abetting, and directing others, namely their direct customers and Sprint/Boost subscribers and end-users, to practice the asserted patents constitutes indirect infringement.

132.   In addition to directly infringing the '874 and '490 Patents, Defendants are now indirectly infringing the '874 and '490 Patents by inducing and/or contributing to infringement by, among other things, ordering, using, licensing, selling, offering for sale, and/or importing the Accused Phones.  End users of the accused products are direct infringers of the '874 and '490 Patents.

133.   Defendants make, use, license, sell, offer to sell, and promote the Accused Phones and Sprint/Boost Visual Voicemail system and service with the specific intent that end users and customers use them in an infringing manner on the Sprint mobile networks.

134.   Defendants sell and offer to sell mobile devices for use in practicing the asserted patents, and the Accused Phones are material to practicing one or more claims of the asserted patents.

135.   The Visual Voicemail and Contacts applications included with the Accused Phones have no substantial non-infringing use and are known to Defendants to be especially made or adapted for use in infringing the asserted patents.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 8,494,490

136.   MSS incorporates paragraphs 1 through 135 herein by reference.

137.   MSS is the owner, by assignment, of U.S. Patent No. 8,494,490.

138.   A true and correct copy of the '490 Patent is attached as Exhibit A.

139.   As the owner of the '490 Patent, MSS holds all substantial rights in and under the '490 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

140.   The United States Patent Office granted the '490 Patent on July 23, 2013.

141.   The '490 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

142.   Defendants practice the '490 Patent by providing, making, selling, offering for sale, licensing, and/or importing the Accused Phones and Sprint/Boost Visual Voicemail system and service.

143.   Defendants have no consent or authorization to practice the '490 Patent.

144.   Defendants provide server-side hardware and software associated with Sprint/Boost Visual Voicemail servers that are adapted to convert voice messages to encapsulated data structures for transmission and storing on an end user's phone, such as an Accused Phone.

145.   Accused Phones receive voice messages from server-side components provided by Sprint.

146.   For cellular transmissions, Sprint provides the data link for transmitting the data structure and transmitting the duration of the message, caller's name, phone number, and other identifying information, time of the call, and audio data

representing the message over a data link (e.g., cellular or Wi-Fi connection).  For voicemail-to-text services, Defendants provide a transcription of the voice message over a data link.

147.   Defendants provide application software installed on Accused Phones for correlating voice messages with contacts data that is synchronized with social networking data and images.

148.   Contacts application software running on Accused Phones retrieve and synchronize social networking data from social networking sites with contact data stored by the contacts application on the Accused Phone.

149.   By this Original Complaint, Defendants are on notice of the infringing products, infringing features and structures, and how end users of the accused products use and operate them under normal conditions consistent with the '490 Patent claims.

150.   In addition to directly infringing the '490 Patent, Defendants are indirectly infringing the '490 Patent by inducing and/or contributing to infringement by, among other things, making, using, licensing, selling, offering for sale, providing, and/or importing the Accused Phones and Visual Voicemail services. Users of the accused products are direct infringers of the '490 Patent.

151.   Defendants advertise and promote the use of Visual Voicemail on their websites and on third party websites (including the Google Play Store).

152. Defendants instruct end users of use the Accused Phones and Sprint/Boost Visual Voicemail services and encourage, aid, and direct end users of their accused products to use them in a manner that infringes the asserted claims of the '490 Patent.

153. Defendants make, use, license, sell, offer to sell, and promote the Accused Phones and Sprint/Boost Visual Voicemail with the specific intent that end users and customers use them in an infringing manner.

154. Defendants sell and offer to sell the Accused Phones and Sprint/Boost Visual Voicemail for use in practicing the '490 Patent, and the accused products are material to practicing one or more claims of the '490 Patent. The accused products have no substantial non-infringing uses and are known to Defendants to be especially made or adapted for use infringing the '490 Patent.

155. By this Original Complaint, Defendants are on notice of how the Accused Phones and the Sprint/Boost Visual Voicemail system and service infringe and how their customers' use of the accused products infringes the asserted claims of the '490 Patent. Subscribers, end users, and Defendants' customers are direct infringers of the '490 Patent.

156. Defendants' analysis and knowledge of the '490 Patent combined with their ongoing activity demonstrates Defendants' knowledge and intent that the Sprint/Boost Visual Voicemail system and service will be combined with other

hardware and software to infringe the '490 Patent.

157.   Defendants' knowledge of the '490 Patent and Plaintiff's infringement allegations against Defendants combined with their knowledge of the accused products and how they are used to infringe the '490 Patent, consistent with Defendants' instructions, demonstrate Defendants' specific intent to induce Defendants' users to infringe the '490 Patent.

158.   MSS has been harmed as a result of Defendants' infringing conduct. Defendants are liable to MSS in an amount that adequately compensates it for their infringement, which compensation cannot be less than a reasonable royalty together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 8,792,874

159.   MSS incorporates paragraphs 1 through 158 herein by reference.

160.   MSS is the owner, by assignment, of U.S. Patent No. 8,792,874.

161.   A true and correct copy of the '874 Patent is attached as Exhibit B.

162.   As the owner of the '874 Patent, MSS holds all substantial rights in and under the '874 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

163.   The United States Patent Office granted the '874 Patent on July 29, 2014.

164.   The '874 Patent is valid, enforceable and was duly issued in full

compliance with Title 35 of the United States Code.

165.   Defendants practice the '874 Patent by providing, making, selling, offering for sale, and/or importing the Accused Phones and the Sprint/Boost Visual Voicemail system and service.

166.   Defendants have no consent or authorization to practice the '874 Patent.

167.   The Accused Phones provided by Defendants and specially made and adapted for use on the Sprint wireless networks include hardware and software designed and intended to be used to function as recited in the '874 Patent claims.

168.   Defendants' Accused Phones feature a synchronization engine as described and claimed in the '874 Patent that performs the functions described above consistent with the asserted claims.  Defendants provide server-side components that enable the Accused Phones to operate as claimed.

169.   Defendants provide specially designed contacts application software that interacts with users' social networks to retrieve social networking profile data for a user.

170.   Defendants provide application software installed on the Accused Phones for correlating voice messages with contacts data that is synchronized with social networking data and images for a user.  Contacts application software running on Accused Phones retrieve and synchronize social networking data for a user from social networking sites with contact data stored by and on the Accused Phone.

171. Defendants are on notice of the '874 Patent and how the Accused Phones and Contacts application software infringe it. Defendants' continued acts of infringement including inducing, encouraging, aiding, abetting, and directing others, namely their direct customers and Sprint/Boost subscribers and end-users, to practice the '874 Patent constitutes indirect infringement.

172. Defendants make, use, license, sell, offer to sell, and promote the Accused Phones having contacts synchronization software and features with the specific intent that their end users and customers use them in an infringing manner on the Sprint mobile networks.

173. Defendants sell and offer to sell mobile devices for use in practicing the asserted claims of the '874 Patent, and the Accused Phones and Contacts application software are material to practicing one or more claims of the asserted patents. Defendants' contacts application software and related hardware and software modules have no substantial non-infringing use and are known to Defendants to be especially made or adapted for use in infringing the asserted patents.

174. By this Original Complaint, Defendants are on notice of the infringing products, infringing features and structures, and how their end users of the Accused Phones and Contacts application software use and operate them under normal conditions consistent with the '874 Patent claims.

175. In addition to directly infringing the '874 Patent, Defendants are

indirectly infringing the '874 Patent by inducing and/or contributing to infringement by, among other things, making, using, licensing, selling, offering for sale, providing, and/or importing the Accused Phones and Contacts application software. Users of the accused products are direct infringers of the '874 Patent.

176.   Defendants advertise and promote the use of the Sprint/Boost Visual Voicemail application and software on their websites and on third party websites (including the Google Play Store).

177.   Defendants instruct their end users to use the Accused Phones and Contacts application software and encourage, aid, and direct their end users of their accused products to use them in a manner that infringes the asserted claims of the '874 Patent.

178.   Defendants make, use, license, sell, offer to sell, and promote the Accused Phones and Contacts application software with the specific intent that their end users and customers use them in an infringing manner.

179.   Defendants sell and offer to sell the Accused Phones and Contacts application software for use in practicing the '874 Patent, and the accused products are material to practicing one or more claims of the '874 Patent.  The accused products have no substantial non-infringing uses and are known to Defendants to be especially made or adapted for use infringing the '874 Patent.

180.   By this Original Complaint, Defendants are on notice of how the

accused products infringe and how their customers' use of the accused products infringes the asserted claims of the '874 Patent. Defendants' subscribers, end users, and customers are direct infringers of the '874 Patent.

181. Defendants' analysis and knowledge of the '874 Patent combined with their ongoing activity demonstrates Defendants' knowledge and intent that the Sprint/Boost Visual Voicemail system and service will be combined with other hardware and software to infringe the '874 Patent.

182. Defendants' knowledge of the '874 Patent and Plaintiff's infringement allegations against Defendants combined with their knowledge of the accused products and how they are used to infringe the '874 Patent, consistent with Defendants' instructions, demonstrate Defendants' specific intent to induce Defendants' users to infringe the '874 Patent.

183. MSS has been harmed as a result of Defendants' infringing conduct. Defendants are liable to MSS in an amount that adequately compensates it for their infringement, which compensation cannot be less than a reasonable royalty together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## NOTICE OF REQUIREMENT OF LITIGATION HOLD

184. Defendants are hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic

recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendants know, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

185.   As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any

personal electronic, digital, and storage devices of any and all of Defendants' agents, resellers, or employees if Defendants' electronically stored information resides there.

186.    Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendants' claims and/or defenses.  To avoid such a result, Defendants' preservation duties include, but are not limited to, the requirement that Defendants immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendants' electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## NOTICE

187.    MSS does not currently distribute, sell, offer for sale, or make products embodying the asserted Patents.

188.    MSS has undertaken reasonable efforts as required to comply with the notice requirements of 35 U.S.C. § 287.

189.    MSS does not allege infringement by or through use of any licensed product nor does MSS accuse any licensed product or combined product or service that is licensed under the asserted patents.

## JURY DEMAND

MSS hereby demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

MSS prays for the following relief:

a.  That Defendants be summoned to appear and answer;

b.  That the Court enter an order declaring that Defendants have infringed the '490 and '874 Patents;

c.  That this is an exceptional case under 35 U.S.C. § 285;

d.  That the Court grant MSS judgment against Defendants for all actual, consequential, special, punitive, exemplary, increased, and/or statutory damages, including treble damages pursuant to 35 U.S.C. 284 including, if necessary, an accounting of all damages; pre and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action; and

e.  That MSS be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: August 24, 2018                       Respectfully submitted,

                                            By: _____
                                            Cabrach Connor
                                            State Bar No. 24036390
                                            cab@connorkudlaclee.com
                                            Jennifer Tatum Lee
                                            State Bar No. 24046950
                                            jennifer@connorkudlaclee.com
                                            Kevin S. Kudlac
                                            State Bar No. 00790089

kevin@connorkudlaclee.com
**CONNOR KUDLAC LEE PLLC**
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
Telephone:  512.77.1254
Facsimile:  888.587.1134

**ATTORNEYS FOR PLAINTIFF**
**MOBILE SYNERGY SOLUTIONS, LLC**